Filed 9/3/15  P. v. Powell CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM JAMES POWELL,<br><br>        Defendant and Appellant. | A144536<br><br>(San Francisco County<br>Super. Ct. No. 14002924) |

Defendant William James Powell was convicted after a jury trial of first degree burglary of an inhabited residence (Pen. Code, § 459),[1] and two counts of receiving stolen property (§ 496, subd. (a)).  The jury also found true that the burglary was committed when another person, other than an accomplice, was present in the residence at the time of the burglary (§ 667.5, subd. (c)(21)).  The trial court found true the additional allegation that defendant committed the burglary while on felony probation (§ 1203, subd. (k)).   Defendant's court-appointed counsel has filed a brief seeking our independent review of the record, pursuant to *People v. Wende* (1979) 25 Cal.3d 436, to determine whether there are any arguable issues for review.  Defendant has also been informed of his right to file supplemental briefing, and he has not done so.  After our independent review of the record, we find no errors or other issues requiring further briefing, and we affirm.

---

[1]  All statutory references are to the Penal Code except as otherwise stated.

1

FACTUAL AND PROCEDURAL BACKGROUND

An information was filed charging defendant with first degree burglary with the allegation that a person was present in the residence at the time of the burglary,[2] and two counts of receiving stolen property, all in connection with an incident that occurred on January 28, 2014, in San Francisco.  It was also alleged that defendant had a prior conviction for second degree burglary for which he had served a state prison term (§ 667.5, subd. (b)), and that he had committed a crime while on felony probation (§ 1203, subd. (k)).

The court ruled on the motions in limine filed by each side.  Among the motions in limine, the prosecution sought to introduce a prior conviction from 2011 for section 459, commercial burglary in the second degree at Safeway, pursuant to Evidence Code section 1101, subdivision (b).  This motion was denied.  The court granted the prosecution's motion, pursuant to Evidence Code section 1101, subdivision (b), to admit evidence concerning defendant's prior conviction from 2013 for receiving stolen property (§ 496).  At an Evidence Code section 402 hearing, the court determined, after listening to a taped statement of an interview with defendant and hearing testimony from Sergeant Young from the San Francisco Police Department, that there had not been a "knowing, intelligent and voluntary waiver of Miranda rights," and thus did not allow defendant's recorded statements to police to be used in the prosecution's case in chief.[3]

A jury was impaneled and sworn.  Terence Meurk, the victim, testified that he was alone in his home at about 8:00 a.m. on January 28, 2014, his wife and children having already left the house, when he heard a big bang and loud crash.  He ran downstairs and found a rock near the front door and pieces of glass all the way to the front of the house. He "turned to look down the length of the house" and saw a person, who he identified in court as defendant, inside the house.  Meurk and defendant made eye contact briefly. Defendant was wearing black pants and a black coat "that was like a cloth coat with a

---

[2] This allegation is commonly referred to as a "hot prowl" allegation.

[3] Defendant did not testify, and his prior statements were not introduced in evidence.

2

zipper type that was kind of puffy . . . like a sweat coat, and wearing a black knit cap." Meurk thought he was a black man, about six feet tall, "big guy, fit . . . strong, . . . good medium-sized build." Meurk starting running towards defendant. Defendant "grabbed the laptop" that was on the kitchen table. Meurk chased defendant and saw him run through and out of Meurk's house. Meurk called 911.

A short while later on the morning of January 28, Meurk was taken to 7th and Market Streets where he identified defendant in a cold show as the person who he had just seen in his house. Meurk also identified defendant in the courtroom as the person he had seen at 7th and Market Streets on the morning of the burglary.

The police brought a laptop computer and an iPod back to Meurk's house. Meurk identified the laptop as the one that he had seen defendant take from Meurk's kitchen table. Meurk knew this because "we were able to start it up when it came back to the house" with his wife's computer user name and password. Meurk had last seen the iPod a week or two before January 28, 2014. It was kept in a car in the garage at Meurk's house, inside the glove compartment. The car was not frequently driven. Meurk knew it was his iPod because he recognized the music on it, and when it was plugged into his computer, the computer recognized the iPod as Meurk's device. After the January 28 burglary, Meurk noticed that "things had been moved around in the garage," such as a box of wine that was inexplicably moved from the storeroom to the garage.

Brad Miller, a neighbor who did not know Meurk before the incident, testified that at about 8:00 a.m. on the morning of January 28, 2014, he was walking with his wife and dog to the car in front of his house when he heard a loud noise and saw a man running "very, very quickly" with a bag that was bouncing open. The man, dressed in a black track suit with a black hat on, exited 227 Connecticut Street and very hurriedly tried to get on a yellow bike that was parked up against a tree in front of the house. Miller made an in-court identification of defendant as the person he had seen on the morning of January 28. The bag defendant was carrying appeared to have gold straps in the bag. Miller saw defendant get on the bike and leave Meurk's house, and ride down the hill and turn east on Mariposa. At that point, Miller saw someone (Meurk) come out of the house

3

shaken and talking on the phone. Miller told Meurk what he had just seen, and heard Meurk relay that information on the telephone.

Miller was contacted by law enforcement officers and went to the police station later that morning. Miller saw the bag and the yellow bike at the police station and identified them as the ones he had seen with defendant that morning.

Sergeant Mari Shepard from the San Francisco Police Department testified that she was in an unmarked patrol car at about 8:00 a.m. on January 28 when she received a report from police dispatch about the burglary at 227 Connecticut Street. The description was a black male in his 20's, six feet tall, thin muscular build, black pants and coat, black beanie cap and yellow bicycle. After not finding anyone matching that description in the neighborhood of the burglary, she and Sergeant Young (who was on patrol with her) drove about two miles away to the area of 7th and Market Streets in San Francisco, known in her experience as an area where stolen goods are commonly bought and sold. The officers arrived about 8:12 a.m. She saw someone who matched the description, wearing a white tank top and black pants with a white stripe down the side, wearing a black beanie cap and riding a yellow bicycle. The person was wearing a large black bag over his shoulder. Shepard identified defendant as the person she saw and later detained that morning.

When defendant was stopped by Sergeant Shepard, she could see a black sweatshirt and a laptop inside the open black bag. Shepard identified the laptop, iPod, black beanie cap, and a black zip-up sweatshirt as the items defendant was wearing or carrying in the bag on the morning of the burglary. Defendant was found with two jackets in his bag: a black hooded sweatshirt and a black tracksuit jacket with white stripes.

Sergeant Thomas Maguire of the San Francisco Police Department testified that he inspected the black jacket found in defendant's bag and found a shard of glass in the pocket.

Steven Sadek testified about a prior incident involving defendant. On August 17, 2013, Sadek was sitting in his living room and saw a person (who he identified in court as

4

defendant) riding a bike around a Ford Explorer or 4-Runner and looking in the windows of the vehicle for a few minutes. Sadek went outside and asked defendant if it was his car, because Sadek thought defendant looked suspicious, and Sadek was trying to stop something from happening. Defendant shook his head no. Sadek went inside the house and was going to call the nonemergency police line when he saw defendant grab a rock and throw it through the back left window of the car and then reach in the vehicle and grab a laptop bag, which he threw over his shoulder. Defendant then rode off on his bicycle. The jury was told that the parties stipulated that defendant subsequently pled guilty to a felony involving this incident.

Dr. Mitchell Eisen testified as a defense expert witness on eyewitness identification, including, among others, such topics as cross-racial identification, identification techniques (line-ups versus cold shows), and suggestibility. This testimony was extensive, covering approximately 120 pages of the reporter's transcript, and lasting approximately three hours.

The jury returned guilty verdicts as described above. The jury was polled to ensure that their verdicts were unanimous.

The allegation that defendant had suffered a prior conviction pursuant to section 667.5, subdivision (b), and the allegation that defendant was on felony probation (§ 1203, subd. (k)) were found true by the court after defendant waived his right to a jury trial on these allegations. The prior conviction finding was then stricken by the court when it learned that defendant appeared not to be the same person who had suffered the prior conviction.

Defendant was sentenced on count 1 (first degree residential burglary with the hot prowl allegation found true) to the midterm of four years in state prison. As to each of counts 2 and 3 (receiving stolen property) defendant was sentenced to the midterm of two years in state prison, with each sentence stayed pursuant to section 654. Defendant was ordered to pay fines and fees, and given 128 days of actual credit and 19 days of conduct credit.

5

REVIEW

Defendant was at all times represented by competent counsel who very ably protected his interests.

The jury's verdict and the court's findings were supported by substantial evidence.

No ruling by the trial court admitting or excluding evidence was an abuse of discretion. No improper or inappropriate jury instruction was given to the jury.

The sentence imposed was lawful, and the court stated its reasons for imposing the sentence. (Cal. Rules of Court, rule 4.420.)

The fines, fees and assessments appear to have been authorized by statute.

We have reviewed the credits calculations and discern no issues on which we require further briefing.

We conclude there are no arguable issues within the meaning of *People v. Wende*, *supra*, 25 Cal.3d 436. The order is affirmed.

 

                                               _____

                                               Miller, J.

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

A144536, *People v. Powell*